UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
*Electronically Filed*

| | | |
|---|---|---|
| PATRICIA MICHAELS | : | |
| | : | Civil Action No. 18-CV-121-DLB-CJS |
| **Plaintiff** | : | |
| v. | : | |
| | : | |
| GRANT COUNTY, ET AL. | : | **FIRST AMENDED COMPLAINT** |
| | : | |
| **Defendants** | : | |

Comes now the Plaintiff, Patricia Michaels, through counsel, and for her First Amended Complaint against Defendants states as follows:

## INTRODUCTION

This action arises out of Plaintiff, Patricia Michaels's employment at the Grant County Animal Shelter in Grant County, Kentucky. This action was initially and appropriately filed in Grant County Circuit Court. [Doc #: 1-2]. As set forth in the original Complaint, Grant County Circuit Court had jurisdiction over the claims asserted and was an appropriate venue since all or substantially all of the claims arose out of Plaintiff's employment in Grant County, Kentucky. [Doc #: 1-2]. After this action was filed, Defendants filed a Notice of Removal. [Doc #:1]. Defendants argued that removal to the Eastern District of Kentucky was appropriate, stating that the Court had jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and that the Court had supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a). [Doc #: 1, Page ID 3]. Thereafter, Defendants filed a Partial Motion to Dismiss that was granted in part and denied in part. Plaintiff is filing this First Amended Complaint to confirm Plaintiff's remaining claims and the basis for those claims.

## PARTIES AND JURISDICTION

1.      At all times relevant hereto, Plaintiff, Patricia Michaels, is a permanent resident at 9350 Dixie Highway, Corinth, Kentucky, and is a resident and citizen of Kentucky.

2.      Plaintiff was at all relevant times hereto an "employee" within the meaning of KRS § 337, et seq. and KRS § 344, et seq, who was employed by Defendant, Grant County and who worked at the Grant County Animal Shelter.

3.      Defendant, Grant County, is and was at all times relevant hereto, an "employer" within the meaning of KRS § 337, et seq. and KRS § 344, et seq.

4.      At all times relevant hereto, Defendant, Stephen Wood served as Grant County Judge Executive in Williamstown, Grant County, Kentucky.  Upon information and belief, at all times relevant hereto, Defendant Wood, who acted in both his individual and official capacity, resides in Grant County, Kentucky and is a resident of Kentucky.

5.      At all times relevant hereto, Defendant, Kathleen Ritzi was employed by Defendant, Grant County, and worked with Plaintiff at the Grant County Animal Shelter.  Upon information and belief, Defendant Ritzi, at all relevant times, was a citizen of Kentucky and resided in Grant County, Kentucky.

6      The practices complained of herein all occurred in Grant County, Kentucky and exceeded the minimum jurisdictional amount of the Grant Circuit Court.

7.      The jurisdiction of the Grant County Circuit Court over Defendants, Grant County, Stephen Wood, and Kathleen Ritzi was based upon their actions and contacts within the Commonwealth of Kentucky.

8.      Venue was appropriate in Grant County as a majority of the acts complained of herein occurred in Grant County, Kentucky.

9.      Although Plaintiff initially filed this matter in Grant County Circuit Court and Grant County Circuit Court was an appropriate jurisdiction and venue to pursue these claims, Defendants removed this action to the Eastern District of Kentucky.

## FACTS RELEVANT TO ALL CLAIMS

10.     Plaintiff is a female.

11.     Plaintiff is over 40 years old and was, upon information and belief, substantially older than all other employees at the Grant County Animal Shelter.  Plaintiff has some age related knee problems.

12.     Defendant Stephen Wood was elected Judge Executive of Defendant Grant County in 2014 and started his position as Judge Executive in January 2015.

13.     Plaintiff began working at the Grant County Animal Shelter (hereinafter "GCAS") in Williamstown, Kentucky on or around April 19, 2012, initially working through the Northern Kentucky Community Action Commission (hereinafter "NKCAC").  The program Plaintiff worked through was a training program for seniors, and she worked approximately ten to twenty hours per week.

14.     On or around April 20, 2016, Grant County hired Plaintiff as a part time employee to work at GCAS, paying her approximately $11.00/hour.

15.     On or around July 3, 2016, Grant County designated Plaintiff as a "permanent part time employee" and gave her a pay raise to $11.17 per hour.

16.     In or around late 2016, GCAS staffed only three employees:  Director Marsha Chaney, Defendant Kathleen Ritzi, and Plaintiff.  Director Chaney repeatedly asked Grant County Fiscal Court for more staff, but her requests were denied.

17.     In or around January/February 2017, Director Chaney went on medical leave, leaving Plaintiff and Kathleen Ritzi as the only employees available and working at GCAS.

18.     On or around April 3, 2017 and when Director Chaney announced that she was returning to work, Kathleen Ritzi went out on medical leave.  On or around April 4, 2017, Director Chaney returned from medical leave, again leaving only two employees - Plaintiff and Director Chaney - operating GCAS.

19.     On or around April 5, 2017, Director Chaney was injured at work.

20.     On or around April 7, 2016, Director Chaney again went out on medical leave, leaving Plaintiff as the only employee working and available to work at GCAS.  At the time and although Plaintiff was working approximately sixty to seventy (60-70) and sometimes more hours per week, Plaintiff was still designated as a "permanent part time employee" and therefore only being paid for twenty two (22) hours per week.  As a result, Plaintiff was not being paid for many of the hours she worked.  Plaintiff reported the exorbitant number of hours worked to the Fiscal Court, but no action was taken.  Plaintiff specifically asked members of the Fiscal Court, including Judge Executive Wood and Pat Conrad, to pay her for all the hours worked and asked them to provide her with help at GCAS. Despite Plaintiff's numerous requests, the Fiscal Court did not take any action.  For approximately four weeks, Plaintiff worked seven days a week from open to close, and sometimes after hours. Plaintiff was never paid for all the hours she worked.

21.     On or around April 13, 2017, Judge Wood visited GCAS.  At this time, Plaintiff again asked for help.  Judge Wood did not provide any additional staff, but did re-classify Plaintiff as a "full time employee" and informed Plaintiff that she would remain a "full time employee" until both Director Chaney and Kathleen Ritzi returned to work.  Despite being made full time, Plaintiff still working more than forty (40) hours per week, and was frequently not paid for those extra hours worked, including overtime hours.

4

22.     During her employment, Judge Wood and Deputy Judge Executive Pat Conrad made highly inappropriate and illegal comments about Plaintiff.  While the exact dates of some of these comments are not known, the following comments were made about Plaintiff prior to Grant County Judge Executive Stephen Wood terminating her employment, including but not limited to the following:

- Stephen Wood stated to Marsha Chaney, "I'm tired of having handicapped people at the shelter that have to take two to three months off", or some similar statement.

- At some time during Marsha Chaney's FMLA leave in 2017, Ms. Chaney had a conversation about Plaintiff on the telephone with Deputy Judge Executive Pat Conrad.  During this conversation, Pat Conrad stated to Ms. Chaney, "Why don't you fire Pat Michaels and hire a man?" or some similar question. Ms. Chaney responded, "Two reasons, loyalty and God.  If the Fiscal Court wants Pat Michaels fired then the Fiscal Court will have to fire her because I will not fire her", or some similar statement

- The February 14, 2015 video of a meeting between Judge Wood and Jailer Hankins and others, which was shown through numerous media outlets, shows Judge Wood's propensity to discriminate based on age, physical appearance, disability and gender.

23.     On or around June 26, 2017, Kathleen Ritzi returned from medical leave.

24.     On or around July 1, 2017, Director Chaney informed Plaintiff that the Fiscal Court had directed her to re-classify Plaintiff back to a "permanent part-time employee".  On or around July 6, 2017, Plaintiff confronted Judge Wood about the re-classification and he denied having any knowledge of the change.

25.     During her employment, Plaintiff was assigned to manage and maintain GCAS's Facebook page.  In order to access and maintain the shelter's Facebook page, Plaintiff accessed the shelter's page as an Administrator through her personal Facebook page.  It is important to note that Facebook has an electronic messaging program.  In order to access Facebook's electronic messaging

program, certain steps have to be taken.  Furthermore, Plaintiff did not access her Facebook personal messaging program while she was at work at the shelter.

26.     Upon information and belief, on or around July 11, 2017 and after Plaintiff left work for the day, Defendant, Kathleen Ritzi: got on Plaintiff's work computer; accessed Plaintiff's personal Facebook page; accessed Plaintiff's personal messaging on Facebook; and scrolled through Plaintiff's personal and private messaging until she found messages about her.  Upon information and belief, Kathleen Ritzi then went to Judge Executive Wood and brought him to the shelter to show him the private and personal messages, and Judge Wood proceeded to scroll through those same private messages.  Upon information and belief, the private information that was accessed by Defendants, Ritzi and Wood, was shared with others

27.     On or around July 12, 2017, Judge Wood met Plaintiff at her car when she pulled up to work at the GCAS.  Judge Wood told Plaintiff her services were no longer needed.  Plaintiff inquired as to why Judge Wood was terminating her.  Judge Wood told Plaintiff, "You posted something about me on Facebook and I didn't like it.  Despite Plaintiff explaining to Judge Wood that she never posted anything about him on Facebook, he still terminated Plaintiff.

28.     Shortly after Plaintiff was terminated, Grant County hired two male employees, Eddie Brinegar and Zachary Sharkey, who are substantially younger than Plaintiff to work at GCAS.

29.     After Plaintiff was terminated, Kathleen Ritzi continued to retaliate against Plaintiff by making highly inappropriate and injurious statements about Plaintiff on social media, including trolling Plaintiff and Plaintiff's candle business on Facebook, and causing irreparable harm to Plaintiff's budding candle making business.

30.     Grant County and Judge Wood retaliated after Plaintiff's termination by contesting her Kentucky Unemployment Insurance benefits.  During the Unemployment benefit proceedings, Judge Wood and others blatantly lied about Plaintiff to try to prevent her from obtaining benefits.

31.     As a result of Defendants' actions, Plaintiff has suffered and is continuing to suffer significant damages, including but not limited to lost wages, lost opportunities, emotional distress.  In addition to the humiliation of having personal and private details disclosed, we have reason to believe that this disclosure has interfered with Plaintiff's ability to secure work elsewhere in Grant County.  Traditionally, Plaintiff has had no difficulty finding work. However, in the months since her private messages were disclosed, Plaintiff has not been offered a single job.

## COUNT I
## Age Discrimination Under KRS § 344

32.     Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

33.     Defendant, Grant County, took adverse employment actions against Plaintiff due to her age, which was 68 at the time of her termination, in violation of Kentucky's Civil Rights Act, KRS § 344.040, et seq.

34.     Defendant, Grant County's termination of Plaintiff was motivated by Plaintiff's age, which was 68 at the time of her termination, in violation of Kentucky's Civil Rights Act, KRS § 344.040, et seq.

35.     As a direct and proximate result of Defendant, Grant County's actions described herein, Plaintiff has suffered from a loss of income and benefits, severe emotional distress and mental anxiety, for all of which she should be compensated.

## COUNT II
## Retaliation Under KRS § 344

36.     Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

37.     Once Plaintiff complained to Defendant of the illegal hostile work environment, Defendant took numerous retaliatory acts against Plaintiff, including terminating her.

38.     As a direct and proximate result of Defendant's conduct herein, Plaintiff has suffered a loss of income and benefits, severe emotional distress and mental anxiety, all for which she should be compensated.

## COUNT III
## Failure to Pay Wages in Violation of Fair Labor Standards Act

39.     Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

40.     Plaintiff was paid on an hourly basis.

41.     Plaintiff was not paid for all hours worked.

42.     Plaintiff was not paid an overtime premium for all hours worked over 40 in a work week.

43.     Defendant, Grant County, knew or should have known that it was required to pay Plaintiff for all hours worked, including overtime pay for all hours worked beyond 40 hours per week and that Plaintiff was not being paid for all hours worked, including overtime for hours worked beyond 40 hours per week.

44.     Accordingly, Plaintiff was forced to work more than 40 hours per week without overtime compensation, and Plaintiff was not paid all of her earned wages.  As a result, Plaintiff

has been damaged, entitling Plaintiff to remedies including, but not limited to, employment, reinstatement, lost wages and an additional equal amount as liquidated damages.

## COUNT IV
## Retaliation in Violation of Fair Labor Standards Act

45.     Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

46.     Plaintiff complained to Defendant Grant County and Defendant Wood that she was not being paid for all hours worked, including not being paid overtime for hours worked beyond 40 hours in a given week.

47.     Upon Plaintiff's complaints about not being paid all wages due, Defendant Grant County and Defendant Wood, in both his individual and official capacities, retaliated against Plaintiff, by harassing her, refusing to pay the wages earned, and ultimately terminating her employment, all in violation of the Fair Labor Standards Act.

48.     As a result of such retaliation, Plaintiff has been damaged, entitling Plaintiff to remedies including, but not limited to, employment, reinstatement, lost wages and an additional equal amount as liquidated damages.

## COUNT V
## Unfair Wage and Hour and Employment Practices in Violation of KRS 337, et seq.

49.     Plaintiff herein incorporates the allegations set forth above as if fully restated herein.

50.     Defendant, Grant County, is an employer under KRS § 337.010(1)(d).

51.     Defendant, Grant County, failed and refused to provide requisite lunch period and break periods to Plaintiff to which she was entitled, in violation of KRS § 337 et seq.

52.     Defendant, Grant County, failed and refused to pay Plaintiff for all hours worked in violation of KRS § 337.020 and failed to pay Plaintiff time and a half for hours worked in excess of 40 hours per week in violation of KRS § 337.285.

53.     Defendant, Grant County, frequently withheld Plaintiff's earned wages in violation of KRS § 337.060.

54.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages for which she is entitled to be compensated.  Pursuant to KRS §337.385, Plaintiff is entitled to recover wages and overtime for all hours worked, less what she actually received, an additional equal amount as liquidated damages, her costs and reasonable attorney fees, and punitive damages.

**COUNT VI**
**Invasion of Privacy**

55.     Plaintiff herein incorporates the allegations set forth above as if fully restated herein.

56.     Plaintiff had a reasonable expectation that Defendants Wood and Ritzi and others would not access her private password protected electronic messaging communications without express permission.

57.     Defendants Wood and Ritzi intentionally and offensively intruded on Plaintiff's private affairs when they accessed Plaintiff's private password protected electronic messaging communications, without Plaintiff's permission.

58.     As a direct and proximate result of Defendants' intentional and tortious invasion of Plaintiff's privacy, Plaintiff has suffered significant damages, including but not necessarily limited to confidential information contained on a password protected work-issued computer. Furthermore, Defendants based Plaintiff's termination on the information they accessed illegally.

10

## COUNT VII
## Violation of Stored Communications Act (18 U.S.C. § 2701, et seq.)

59.     Plaintiff herein incorporates the allegations set forth above as if fully restated herein.

60.     Defendants, intentionally and without authorization or exceeding any authorization obtained, accessed Plaintiff's private electronic communications in violation of 18 U.S.C. § 2701(a).

61.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and is continuing to suffer actual damages, including but not limited to lost wages and emotional distress and anxiety, all for which she is entitled to recover.

62.     Pursuant to 18 U.S.C. § 2707(d) and because Defendants' violation of 18 U.S.C. § 2701(a) was willful or intentional, Plaintiff is also entitled to recover punitive damages and the costs of pursuing this action, including reasonable attorney fees and costs.

## COUNT VIII
## Tortious Interference with a Business Relationship/Opportunities

63.     Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

64.     Plaintiff was in the process of starting a candle company.

65.     Defendants knew that Plaintiff was starting a valid business.

66.     One or more of the Defendants intentionally and improperly interfered with the business Plaintiff had started.

67.     As a direct and proximate result of Defendants' intentional and tortious interference with Plaintiff's business opportunities, Plaintiff has suffered damages, including but

not limited to lost wages and emotional distress and anxiety, for which she should receive both compensatory and punitive damages.

**COUNT IX**
**Defamation by Slander/Libel**

68.     Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

69.     Defendant, Kathleen Ritzi, in the past and presently harm Plaintiff's good name, character and reputation through the publication of false, injurious statements about Plaintiff to third parties.

70.     As a direct and proximate result of the Defendants' conduct described herein, Plaintiff has suffered from a loss of income and benefits, severe emotional distress, mental anxiety and irreparable damage to Plaintiff's good name, character and reputation, for all of which she should be compensated.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

a.     For all compensatory and punitive damages with respect to statutory and tort claims;

b.     For an award of reasonable costs and attorney's fees; and

c.     For any and all other equitable and legal relief to which Plaintiff appears entitled.

Respectfully submitted,

BONAR, BUCHER & RANKIN, PSC

/s/ Anthony J. Bucher
Barbara D. Bonar
Anthony J. Bucher
3611 Decoursey Avenue
Covington, Kentucky 41015
859-431-3333 (office)
859-392-3900 (fax)
Attorneys for Plaintiff

**<u>JURY DEMAND</u>**

Plaintiff herein demands a trial by jury.

/s/_Anthony J. Bucher
Anthony J. Bucher